STATE EX REL. BERG EQUIPMENT CORPORATION, Petitioner,
v. TOWN OF SPENCER BOARD OF REVIEW, Respondent.

*No. 224.   Argued November 4, 1971.—Decided December 2, 1971.*
(Also reported in 191 N. W. 2d 892.)

234

For the petitioner (appellant) there were briefs by *Tinkham, Smith, Bliss & Patterson,* attorneys, and *James P. Lonsdorf* of counsel all of Wausau, and oral argument by *Richard P. Tinkham.*

For the respondent there was a brief by *Kelley, Weber & Bolte,* and *Richard J. Weber,* all of Wausau, and oral argument by *Richard J. Weber.*

HEFFERNAN, J. The Berg Equipment Corporation manufactures barn-cleaning equipment in the town of Spencer in Marathon county. It has subsidiaries elsewhere and also has a sales outlet in Canada. Materials and items in the manufacturing process are on occasion transferred from one manufacturing site to another. The company operates two plants in the town of Spencer. At the time of the assessments in 1969, each plant contained a large quantity of raw materials and work in process as well as machinery used in the manufacture of barn-cleaning equipment. The following assessment was made for 1969:

*1969 assessments.*

Inventory (manufacturing stock) . .$295,000.00
Machinery ...................... 167,500.00
Furniture and fixtures ........... 6,800.00
Plant No. 1 .................... 255,000.00
Plant No. 2 .................... 530,000.00

The Berg Equipment Corporation does not dispute the assessments for machinery and for furniture and fixtures. It contended at the board of review, and has persisted in the circuit court and here to assert, that the work-in-process inventory should not exceed $150,000 and that the combined valuation of the two plants should not exceed $693,000.

During the course of the proceedings it was stipulated that the transcript of the proceedings of the town of Spencer board of review for 1968 covering these identical properties could be made a part of the record in the instant case. The 1968 assessments were:

*1968 assessments.*

Inventory ......................$755,000.00
Machinery ...................... 263,464.00
Furniture and Fixtures ........... (not of record)
Plant No. 1 .................... 464,000.00
Plant No. 2 .................... 640,000.00

The 1968 assessments were apparently considered on certiorari by the circuit court for Marathon county, but no further appeal was taken.

The Berg Equipment Corporation operates on a fiscal year which ends on September 30th, at which time a physical inventory is made. However, the corporation kept no perpetual inventory from which, by additions to or subtractions from the original inventory, a book figure inventory could be ascertained on a particular date. Vernon R. Berg, president of the corporation, testified at the 1968 board of review, in referring to the

inventory of personal property, "It would be impossible to keep accurate track of it."

The Berg Equipment Corporation's basic contention is that a portion of their manufactured stock was being held for retail sale directly to farmers, and that, therefore, it was not taxable by the town. This legal proposition has not been challenged by the taxing authorities. Rather, they assert that, on a factual basis, the Berg Equipment Corporation has failed to show what portion of its entire work-in-process inventory was exempt.

The Berg property was visited on May 1, 1969, by William Rindfleisch, the town assessor, and Roman Herman, an expert appraiser and member of appraisal institute. They viewed the real estate and observed the inventory but made no actual count of it. Herman requested Berg to furnish him with a completed personal-property blotter and his bookkeeping records for the plant machinery and equipment. Some information was furnished, but Herman testified that the information was insufficient and incomplete. The Berg Equipment Corporation supplied a "Manufacturers' Statement of. Property," which is provided for in sec. 70.35 (1), Stats. While the statement estimated the book value of the personal property at the Berg Equipment Corporation on May 1, 1969, to be $295,596.69, a notation appeared in the space provided for market value, "Assessable Inv. in twnshp. of Spencer $150,000. Balance exempt under Wis. Statutes Sect. No. 70.111 or in London, Ontario, Canada." This statement was furnished on June 18, 1969.

There is no dispute, apparently, in respect to the gross value of the inventory. The record shows Berg acknowledged that he had no written records to substantiate the claimed exemption. He stated that, after the assessors left his place of business on May 1st, he personally inventoried the completed manufactured goods and arrived

at the $150,000 figure. Despite the request of the assessors for an itemized statement, none was ever received.

Berg and Herman met on November 13, 1969. At that time, Herman attempted to acquire additional information, but never received any itemization of the claimed exempt personal property. The parties met again on December 10, 1969. Berg asserts that at that time the assessors agreed to having the valuations entered in the assessment roll in the amounts claimed by Berg. On December 11th, Rindfleisch, the official assessor, sent Berg a letter stating, "I have entered the assessments, in the Assessment Roll, as agreed in your office Wednesday morning, Dec. 10th." There is evidence submitted at the board of review meeting that, although such letter was sent, the agreement was understood to be tentative and was subject to Berg's agreement to provide additional information to justify his figures. During the interim between December 10th and December 17th, Herman and the assessor concluded that the taxpayer's records were incomplete and that the exemption could not be allowed. Berg was so informed by letter of December 17.

The corporation thereupon filed an objection to the assessment as required by sec. 70.47 (7) (a), Stats. Berg appeared as president of the corporation at the hearing held on December 22. He waived all statutory notice requirements. The testimony added little to the record, and the only evidence adduced as a result of Berg's testimony was a statement that, on the basis of his inventory made on May 1, the value of the nonexempt property was $150,000. The assessor, Rindfleisch, and the expert appraiser, Herman, testified that the total value of the inventory was that shown on the assessment roll and that no information had been submitted which would enable them to determine what property, if any, was exempt from taxation. Even at this late date, the board of review offered the taxpayer the opportunity to submit additional records which would substantiate Berg's asser-

tions. The meeting was adjourned for an additional two days for Berg to supply that information, but the record fails to show that any information was furnished.

On this appeal, the corporation's primary argument is that there was an agreement between the assessors to accept the figures submitted by Berg. The testimony, however, at the board of review reveals that the agreement was merely to accept the taxpayer's valuation if it was supported by further evidence. It was apparent that the board of review chose to believe the assessors and not Berg. In any event, we are satisfied that such an agreement would have no validity.

Sec. 70.34, Stats., provides that personalty shall be valued at "true cash value." This is a mandatory obligation placed upon the assessor alone and is not a figure that can be determined by bargaining with the taxpayer. Such agreement would be contrary to public policy and wholly void. The record makes it abundantly clear that the gross cash value was properly determined and undisputed, and the agreement was merely that the corporation's net inventory would be accepted if there were substantiation for the claimed exemptions.

At oral argument, taxpayer's counsel acknowledged that one objecting to the assessment roll has the burden of proof to show that it is incorrect. Sec. 70.47 (7), Stats., provides:

"No person shall be allowed in any action or proceedings to question the amount or valuation of property unless such written objection has been filed and such person in good faith presented evidence to such board in support of such objections . . . ."

In sec. 70.47 (6), Stats., the board is directed not to "raise or lower the assessment of any property except after hearing" before the board of review. The assessment roll is prima facie evidence of the correct valuation and can be set aside only if the taxpayer has assumed his

burden of proof. The Berg Equipment Corporation has not done so.

Sec. 70.34, Stats., provides, "All articles of personal property shall, as far as practicable, be valued by the assessor upon actual view at their true cash value . . . ." The assessors visited the plants and viewed not only the real estate but the contents of the plants. We are satisfied that such inspection constituted "as far as practicable" an actual view of the personal property.

Berg himself testified that the inventory was "impossible to keep accurate track of." An assessor's inspection could not have definitively determined what pieces of equipment were ready for sale and, therefore, according to Berg, exempt. The assessor was obliged to rely upon Berg to assert his exemption as required by the statutes. Sec. 70.111 (10) (b) 3, Stats., provides that one claiming an exemption for merchandise shall file a sworn statement "describing such property and stating the quantity, value and location thereof as of May 1." At the very most, Berg asserted the value of the exempt inventory but did not itemize it. In this case the assessor had only one figure, Berg's assertion, to rely on—the gross valuation for personal property of $295,596.69 contained in his manufacturers' statement of property.

We should also point out that there is no evidence of record to show that the finished products, if any, qualified for any exemptions as provided in sec. 70.111 (10), Stats. The town, however, has not made this an issue.

We are satisfied that the assessment of personal property was valid and was prima facie correct and the Berg Equipment Corporation, by either failing to produce the records it did have or failing to keep records that showed the exempt status of some of the merchandise, was in no position to protest the assessment.

The real property was personally viewed by the assessors in accordance with the directions of sec. 70.32, Stats.

In addition, the 1968 board of review proceedings amply demonstrated the valuation then placed on the real estate. The 1968 valuation of plant No. 1 was $464,000. In 1969 the valuation placed on that plant was $255,000. In 1968 plant No. 2 was assessed at $640,000 and in 1969 it was assessed at $530,000. In view of the ample support given to the 1968 valuation at the board of review, it is surprising that the 1969 assessments were substantially reduced even though there was no evidence of a reduced market value. It is apparent that Berg relied upon his judgment of the plants' depreciated book value and not upon market value. The assessment must be made upon the latter standard.

In respect to both the real property and the personal property, Berg's assertions were mere opinions unsubstantiated by either expert testimony or documentary evidence relating to true market value. We said in *State ex rel. Lake Nebagamon Ice Co. v. McPhee* (1912), 149 Wis. 76, 82, 135 N. W. 470:

"A mere opinion of the owner with reference to the value of personal property, unsupported by facts or circumstances and coupled with evasive answers as to the quantity and market value of the personal property in question, while worthy of consideration by the board of review, cannot be held to so nullify the assessor's valuation that the board is without jurisdiction to confirm the latter."

That statement is appropriate in the instant case.

There was also objection by the taxpayer's attorney to another appraisal that allegedly was made of the Berg property. There is no evidence to show that such appraisal was in any way considered by the assessor in valuing the property or by the board of review in concurring in the assessor's valuation. The remarks in respect to the other appraisal were stricken from the record, and, in any event, the assessment was sustained

on the basis of what was properly before the board of review.

The taxpayer also contends that the board of review was prejudiced because each of its members was a taxpayer and that, since the corporation paid approximately 25 percent of the town's taxes, they, as taxpayers, stood to gain by increasing the valuation placed on his property. Although we have carefully examined the record, we see no evidence of actual prejudice and, on the contrary, there is every evidence that the Berg Equipment Corporation was given a fair hearing and repeated opportunities to document its position long after the board of review could have foreclosed the introduction of additional evidence in respect to exempt property. Sec. 70.111 (10) (b) 3, Stats. The fact that a member of the board of review is also a taxpayer of the municipality does not constitute a disqualification as a matter of law.

We are satisfied that the legislature in statutorily determining that the board of review would be composed of officers of the town concluded that it was in the public interest to so constitute the board. The standards of review that this court applies on writ of certiorari were recently stated in *State ex rel. Boostrom v. Board of Review* (1969), 42 Wis. 2d 149, 155, 166 N. W. 2d 184:

" 'The principles of law are well settled governing the jurisdiction of courts in reviewing the findings of boards of review on *certiorari*. The duties of boards of review are *quasi*-judicial and courts have no jurisdiction to disturb their findings or determinations except where they act in bad faith or exceed their jurisdiction. . . . If a board of review does not act arbitrarily or dishonestly and the evidence presented before it is sufficient to furnish any substantial basis for the valuation found by the board, its decision will not be disturbed. . . . The presumptions are all in favor of the rightful action of such board. The assessor's valuation of property is *prima facie* correct and is binding upon the board of review in the absence of evidence showing it to be incorrect. . . .' "

The statement of law is applicable here. The taxpayer herein simply failed to present sufficient evidence to show that the assessed valuation was even arguably incorrect.

*By the Court.*—Judgment affirmed.